IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| | * |
| Plaintiff | * |
| | * |
| v. | * Case Number: 2:24-cv-144 |
| | * |
| CITY OF BRUNSWICK, GEORGIA, | * |
| | * |
| Defendant | * |

**DEFENDANT'S MOTION TO DISMISS**

COMES NOW the City of Brunswick, Georgia, Defendant in the above-styled

action, and pursuant to Fed. R. Civ. P. 12(b) moves the Court to dismiss all claims

asserted against it in Plaintiff's Complaint. In support of this motion, the City shows the

following:

**Introduction and Statement of Facts**

From 2022 to 2023, the City of Brunswick experienced a spate of violent attacks

committed by persons who all appeared to have some connection with the Well, a

facility that provides services to unhoused individuals. Exhibit 1, State Court

Complaint, ¶¶ 22-26.[1] Numerous City residents and business owners reported seeing

conduct that ranged from unsanitary to criminal occurring on, or near, the property

---

[1] "Under the doctrine of incorporation by reference, [courts] may [] consider documents attached to [a] motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020). Plaintiff's complaint explicitly cites, and thus incorporates by reference, the complaint filed by the City of Brunswick in the related state-court action. Dkt. 1, ¶ 39.

used by the Well. *Id.*, ¶¶ 13, 32; Dkt. 1, ¶ 16. On April 11, 2023, the Mayor of the City of Brunswick sent a letter to the Well requesting that it cease operations. Dkt. 1, ¶ 18. That letter "did not cite an ordinance, regulation, or other legal authority underlying the closure request**.**" *Id.*

The board of FaithWorks, the entity that operates the Well, decided – based on the Mayor's letter and "mounting community pressure" – to close the facility for 65 days beginning April 21, 2023. Dkt. 1, ¶ 19. Around that same time, the City adopted a new ordinance entitled "Homelessness Services," which requires, among other things, that entities engaged in providing services to unhoused persons must apply for a conditional use permit. *Id.*, ¶ 21. While the Well was closed, FaithWorks applied for such a permit with respect to a different location than the Well, but the application was twice rejected by the City for failure to include required information. *Id.*, ¶ 27. Also during the closure, the City Manager contacted FaithWorks to request that it not resume its operation at the Well at the conclusion of the 65-day period, and that it instead continue to pursue opening a separate facility elsewhere in the City. *Id.*, ¶ 28. She suggested, in the alternative, that FaithWorks seek a conditional use permit for the Well if it wished to continue operating at that location. *Id.*

The Well reopened in July 2023, and approximately two weeks later, the City filed a nuisance action in Glynn County Superior Court with respect to the property. Dkt. 1, ¶¶ 35, 39. In its complaint in the nuisance action, the City noted that calls to the Brunswick Police for service to the Well had dramatically decreased during the closure

period, and that residents and business owners in the vicinity had noted a significant improvement to the area. State Court Complaint, ¶¶ 31, 32. Southeast Education Services, Inc., the entity that does business as FaithWorks, filed an answer and counterclaim raising the same RLUIPA claims presented in the complaint in this action. Exhibit 2, Answer and Counterclaim. The nuisance action remains pending, and the Well has continued operating. Dkt. 1, ¶ 48.

Eighteen months after the state-court action was filed, the United States filed this action. Dkt. 1, p. 1. The complaint seeks a declaration that the City has violated RLUIPA, and an injunction requiring, *inter alia*, that the City dismiss its nuisance complaint and motion for a temporary restraining order in Glynn County Superior Court and "cease requiring The Well to submit to the conditional use permit approval process [] to continue operating at its current location." *Id.*, pp. 14-15. For multiple reasons, the complaint fails to state a claim and should be dismissed. First, although the United States is not automatically precluded by the Anti-Injunction Act from bringing suit in federal court to enjoin a state-court action, none of the factors that generally support the exercise of federal jurisdiction in such a case are present here. Second, the City's state-court nuisance action is not an attempt to "impose or implement a land use regulation," and RLUIPA consequently is not implicated. Finally, even if RLUIPA were potentially applicable here, the alleged burden on the Well – essentially, that it apply for a conditional use permit – is one that the Eleventh Circuit has held does not rise to the

level of "substantial." For each of these independently sufficient reasons, dismissal is warranted.

**Legal Standard**

"Whether a district court has the authority to enjoin a state court action under an exception to the Anti–Injunction Act is a question of law . . . " *Estate of Brennan ex rel. Britton v. Church of Scientology Flag Serv. Org., Inc.*, 645 F.3d 1267, 1272 (11th Cir. 2011). If an exception applies, the question of whether an injunction should actually issue is "a mixed question of law and fact," and the trial court can exercise its discretion. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 764 F.3d 1327, 1334 (11th Cir. 2014).

Where a defendant challenges a complaint for failing to adequately state a claim upon which relief can be granted, the court should apply a "two-pronged approach" in analyzing the complaint. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). First, the court should "eliminate any allegations in the complaint that are merely legal conclusions." *Id.* This first prong excludes "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Second, the court should assume that all well-pleaded factual allegations are true "and then determine whether [those allegations] plausibly give rise to an entitlement to relief." *Am. Dental Ass'n*, 605 F.3d at 1290. In determining plausibility, the court should "draw on its experience and common sense." *Iqbal*, 556 U.S at 663. Moreover, it is proper for the court to infer "'obvious alternative explanation[s]' which suggest lawful conduct rather than the unlawful

conduct the plaintiff[s] would ask the court to infer." *Am. Dental Ass'n*, 605 F.3d at 1290

(quoting *Iqbal* and relying on *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

Ultimately, if the plaintiffs have not "nudged their claims across the line from

conceivable to plausible, their complaint must be dismissed." *Id.* at 1289 (quoting

*Twombly*, 550 U.S. at 570).

**Argument and Citation of Authority**

I.    ***Plaintiff's claims for injunctive relief should not be entertained during the
      pendency of related proceedings in state court.***

The Anti–Injunction Act provides that "[a] court of the United States may not

grant an injunction to stay proceedings in a State court action except as expressly

authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect

or effectuate its judgments." 28 U.S.C. § 2283. "The Anti–Injunction Act's core message

is one of respect for state courts, and it broadly commands that those tribunals shall

remain free from interference by federal courts." *SFM Holdings, Ltd. v. Banc of Am. Sec.,

LLC*, 764 F.3d 1327, 1335 (11th Cir. 2014), quoting *Smith v. Bayer Corp.*, 564 U.S. 299, 131

S.Ct. 2368, 2375, 180 L.Ed.2d 341 (2011) (punctuation and citation omitted).

"[P]roceedings in state court should normally be allowed to continue unimpaired by

intervention of the lower federal courts, with relief from error, if any, through the state

appellate courts and ultimately the United States Supreme Court." *In re Bayshore Ford

Trucks Sales, Inc.*, 471 F.3d 1233, 1250 (11th Cir. 2006) (citation omitted).

When the plaintiff seeking to enjoin a state action in federal court is the United

States, injunctive relief is "not directly precluded by the strictly enforced rule of the

-5-

Anti–Injunction Act." *State of Tex. v. United States*, 837 F.2d 184, 186 (5th Cir. 1988), cert. denied, 488 U.S. 821, 109 S. Ct. 65, 102 L. Ed. 2d 42 (1988) (citing *Leiter Mins., Inc. v. United States*, 352 U.S. 220, 226, 77 S. Ct. 287, 291, 1 L. Ed. 2d 267 (1957)). *See also Trump v. Vance*, 941 F.3d 631, 639 (2d Cir. 2019), aff'd and remanded, 591 U.S. 786, 140 S. Ct. 2412, 207 L. Ed. 2d 907 (2020) ("the Anti-Injunction Act neither precludes nor compels a stay of state court proceedings on the application of the United States."). However, "the overarching principle that federal courts are to be cautious about infringing on the legitimate exercise of state judicial power"remains applicable. *State of Tex.*, 837 F.2d at 186.

In *Leiter Mins., Inc. v. United States,* the seminal case involving the United States seeking to enjoin a state action in federal court, Leiter Minerals filed a state-court action seeking to have itself declared the owner of mineral rights under land owned by the United States and held by private-defendant lessees. 352 U.S. 220, 221, 77 S. Ct. 287, 288, 1 L. Ed. 2d 267 (1957). The state court denied motions to dismiss by the lessees, and the United States then filed a quiet title action in federal court, including a request for an injunction precluding Leiter Minerals from pursuing its state-court claim. *Id.* at 222. Leiter Minerals moved to dismiss the federal action, or, in the alternative, to stay the federal action until the state-court case was resolved. *Id.* at 223. The trial court granted the injunction requested by the United States, finding that "the title of the United States could be tried only in the federal court action and that an injunction against prosecution of the state proceedings should issue to protect its jurisdiction pending determination of

the ownership of the property," and the Fifth Circuit affirmed. *Id.* The Supreme Court granted certiorari to address the "important and difficult questions of federal-state relations" raised by the case. *Id.*

The *Leiter* Court first determined, as an issue of first impression, that the Anti-Injunction Act does not categorically preclude claims brought by the United States that would be barred if brought by private plaintiffs. 353 U.S. at 226. Having concluded that the relief requested by the United States was not barred outright by the Anti-Injunction Act, the Court went on to analyze whether the district court "properly exercised its jurisdiction" when it elected to "entertain the suit in the federal court and to prevent the effectuation of state court proceedings." *Id.* at 228.

The Supreme Court first considered the fact that "[t]he suit in the federal court was the only one that could finally determine the basic issue in the litigation," because one of the parties claiming an interest in the mineral rights at issue – the United States – was not a party to the related state-court action. *Id.* at 226. Distinguishing a case in which it affirmed the dismissal of a similar complaint for injunctive relief by the United States, the Court suggested that federal jurisdiction is lacking where a related state-court case does not threaten the "'impairment of any rights' of the United States or 'any sacrifice of its proper dignity as a sovereign.'" *Id.* at 227, quoting *United States v. Bank of New York & Tr. Co.*, 296 U.S. 463, 479, 56 S. Ct. 343, 348, 80 L. Ed. 331 (1936). The *Leiter* Court then noted that the case before it involved "a private party [] seeking by a state proceeding to obtain property currently in the hands of persons holding under the

United States." *Id.* at 227-28. Because the position of the United States was "essentially a defensive one," the Court held, the choice of a federal forum by the United States was entitled to some deference. *Id.* at 228. For these reasons, the *Leiter* Court concluded that the trial court properly exercised its jurisdiction when it allowed the suit to proceed in federal court. *Id.*

None of the factors that the *Leiter* Court held warrant an exercise of federal jurisdiction to enjoin a state-court proceeding are present in this case. Here, the "basic issue in the litigation" – whether the Well may continue to operate at its current location, and whether the City may impose any restrictions on that operation – can be determined in the state-court action. Indeed, all of the arguments that the United States raises in this action have been pleaded in the counterclaim filed by Southeastern Educational Services in the Glynn County case. This case does not involve property owned by the United States or other interests unique to the Government, and the United States thus is not an indispensable party here as it was in *Leiter.* Likewise, because the interests the United States seeks to vindicate in this case are those of a nonparty, there is no risk of "impairment of [its] rights" if the case is allowed to proceed in state court. And the posture of the United States in this case is not "a defensive one." Under the framework set forth by the Supreme Court, the exercise of federal jurisdiction over this case is not warranted, and the action should be permitted to proceed in Glynn County Superior Court.

II.    **Plaintiff's complaint fails to state a claim for violation of RLUIPA.**

    A.    *The City's attempts to abate a nuisance at the Well do not amount to the*
        *imposition or implementation of a land use regulation.*

The Religious Land Use and Institutionalized Persons Act provides that a
government may not "impose or implement a land use regulation in a manner that
imposes a substantial burden on the religious exercise of a person, including a religious
assembly or institution . . ." 42 U.S.C. § 2000cc(a)(1). The term "land use regulation" is
defined, under RLUIPA, as a "zoning or landmarking law . . . that limits or restricts a
claimant's use or development of land . . ." 42 U.S.C. § 2000cc–5(5). Where a city files a
nuisance action that identifies violations of both zoning laws and "other code sections
that are not zoning or landmarking laws," RLUIPA is implicated only "to the extent
[that the action's] corrective demands implement the City's zoning laws." *Temple of 1001
Buddhas v. City of Fremont,* 562 F. Supp. 3d 408, 430 (N.D. Cal. 2021).

Under Georgia law, "[a] nuisance is anything that causes hurt, inconvenience, or
damage to another and the fact that the act done may otherwise be lawful shall not keep
it from being a nuisance . . ." OCGA § 41–1–1. "What this means is that a business that is
itself legal cannot be a nuisance per se but can become a nuisance when conducted in an
illegal manner, to the hurt, inconvenience or damage to another, or because of the
locality in which it is operated." *Life for God's Stray Animals, Inc. v. New N. Rockdale Cnty.
Homeowners Ass'n,* 253 Ga. 551, 553, 322 S.E.2d 239, 242 (1984) (citation and punctuation
omitted).  "To constitute a nuisance, it is not necessary that the noxious trade or
business should endanger the health of the neighborhood. It is sufficient if it produces

-9-

that which is offensive to the senses, and which renders the enjoyment of life and property uncomfortable." *Id.*

The complaint filed by the City of Brunswick in Glynn County Superior Court asserts a single cause of action for "Public Nuisance." State Court Complaint, p. 5. The claim incorporates a handful of allegations relating to the City's zoning ordinances, but does not allege that the operation of the Well amounts to a nuisance *because* it does not comply with those ordinances. *Id.*, ¶¶ 5, 8, 35. Rather, the complaint focuses primarily on violations of criminal statutes by persons believed to be associated with the Well, and on complaints by neighboring owners and businesses regarding conduct "offensive to the senses" emanating from the Well. *Id.* ¶¶ 12-26 (criminal acts); ¶¶ 13, 32, 33 (complaints from neighboring property owners). These allegations are sufficient to state a claim for nuisance under Georgia law, and the City's claim that the operation of the Well amounts to a public nuisance thus does not rely on allegations that the property is not in compliance with any land use regulation. *Life for God's Stray Animals, Inc. v. New N. Rockdale Cnty. Homeowners Ass'n*, 253 Ga. 551, 553, 322 S.E.2d 239, 242 (1984). At most, the City's complaint in the state-court action implies that the nuisance could be abated by compliance with the applicable zoning regulation – but it does *not* allege that such compliance is required, and does not seek relief related to any zoning ordinance. The allegations set forth in Plaintiff's complaint do not establish that the Well has been burdened by the imposition or implementation of a land use regulation, and Plaintiff's claim under RLUIPA consequently fails.

B.    *To the extent that the City's land-use regulations impose a burden on the Well, that burden is not substantial.*

A claim arises under RLUIPA only if the burden imposed or implemented by a land use regulation is "substantial." *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1225 (11th Cir. 2004), citing  42 U.S.C. § 2000cc(a)(1). In *Midrash Sephardi*, two synagogues mounted an RLUIPA challenge to a local zoning ordinance that prohibited the operation of houses of worship in seven of eight districts, and required a conditional use permit for those uses in the one district in which they were permitted. 366 F.3d at 1219. Both synagogues owned or leased property in districts where religious uses were not permitted. *Id.* They argued that the zoning ordinance imposed a number of separate "substantial burdens" – congregants, whose Orthodox Jewish religion forbade them to drive, would have to walk too far if the synagogues were located in the permitted district; the congregations would thus shrink to a point that services would no longer be feasible; suitable property might not be available in the permitted district; and the synagogues would still have to apply for conditional use permits even if they could locate suitable property. *Id.* at 1227.

The Eleventh Circuit wasted little time in holding that none of the above complaints amount to a "substantial burden" on religious exercise:

> While walking may be burdensome and "walking farther" may be even more so, we cannot say that walking a few extra blocks is "substantial," as the term is used in RLUIPA
>
>  . . .

. . . That the congregations may be unable to find suitable alternative space does not create a substantial burden within the meaning of RLUIPA. As the Seventh Circuit noted, "whatever specific difficulties [the plaintiff church] claims to have encountered, they are the same ones that face all [land users], not merely churches. The harsh reality of the marketplace sometimes dictates that certain facilities are not available to those who desire them." [cit.]

Requiring churches and synagogues to apply for CUPs allows the zoning commission to consider factors such as size, congruity with existing uses, and availability of parking. We have found that such reasonable "run of the mill" zoning considerations do not constitute substantial burdens on religious exercise.

*Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 n. 11 & 1228 (11th Cir. 2004).

Here, to the extent that the alleged actions of the City of Brunswick amount to the "imposition or implementation of a land use regulation," the land use regulation in question is the City's Homelessness Services Ordinance – and the specific burden alleged by Plaintiff is the "requir[ement] to submit to the conditional use permit approval process" under that statute. Dkt. 1, p. 15. The United States, in its complaint, explicitly acknowledges that the City has indicated that operation of the Well can continue at the present location if a conditional use permit is obtained. *Id.*, ¶ 28 & p. 15. As noted above, the complaint and incorporated documents make clear that obtaining a conditional use permit is a sufficient, but not necessary, condition for continued operation of the Well. But even if Plaintiff had alleged that the Well were *required* to obtain a conditional use permit in order to continue operation, that requirement would not amount to a substantial burden on religious exercise as a matter of law. *Midrash*

*Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 n. 11 & 1228 (11th Cir. 2004). For this additional reason, Plaintiff fails to state a claim under RLUIPA.

## Conclusion

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's complaint with prejudice.

This twenty-eighth day of February, 2025.

/s/ Richard K. Strickland
Richard K. Strickland
Georgia Bar No. 687830

/s/ Emily R. Hancock
Emily R. Hancock
Georgia Bar No. 115145
BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP
5 Glynn Avenue (31520)
Post Office Box 220
Brunswick, GA 31521
(912) 264-8544
(912) 264-9667 FAX
rstrickland@brbcsw.com
ehancock@brbcsw.com

**ATTORNEYS FOR DEFENDANTS**